# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PFIZER INC.,                                   )
PFIZER IRELAND PHARMACEUTICALS,                )
WARNER-LAMBERT COMPANY, and                    )
WARNER-LAMBERT COMPANY LLC,                    )
                                               )
          Plaintiffs,                          )
                                               )
     v.                                        )     Civil Action No. 08-948 (LDD)
                                               )
APOTEX INC. and                                )
APOTEX CORP.,                                  )
                                               )
          Defendants.                          )
_____)

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT APOTEX INC.'S RULE 12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Rudolf E. Hutz (#484)
Jeffrey B. Bove (#998)
Mary W. Bourke (#2356)
Daniel C. Mulveny (#3984)
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141

OF COUNSEL:
William E. McShane
CONNOLLY BOVE LODGE & HUTZ LLP
1875 Eye Street, NW
Suite 1100
Washington, DC 20006
(202) 572-0335

*Attorneys for Plaintiffs*

Dated: March 16, 2009

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

I.      INTRODUCTION ........................................................................................... 1

II.     NATURE AND STAGE OF THE PROCEEDING............................................... 1

III.    SUMMARY OF ARGUMENT ........................................................................ 3

IV.     FACTUAL BACKGROUND ........................................................................... 5

        A.      Apotex's ANDA is the sole basis for this lawsuit ................................ 5

        B.      Apotex's ANDA Notice Letter, which is a critical part of its ANDA
                and serves as the basis for Pfizer to bring this lawsuit, was sent to
                Pfizer's Delaware counsel in Wilmington, Delaware............................ 6

        C.      Apotex's business is generic medicines and as part of this business it
                regularly sells these medicines in Delaware ........................................ 7

        D.      In carrying out its business of selling generic medicines in the
                United States, Apotex Inc. also conducts substantial business in
                Delaware by litigating patents to obtain FDA approval and it has
                frequently availed itself of Delaware Courts by filing counterclaims .................... 8

        E.      Apotex attempts to avoid jurisdiction in Delaware by designating its
                Chicago, Illinois litigation counsel to be its agent for service of
                process............................................................................................ 9

        F.      Apotex has selectively designated its agent in Chicago, Illinois for
                this case ......................................................................................... 10

        G.      Pfizer filed an identical protective suit in the Northern District of
                Illinois and has moved to stay that suit pending resolution of
                Apotex's Motion to Dismiss ............................................................ 10

V.      ARGUMENT ............................................................................................... 11

        A.      Jurisdiction is proper when Delaware's Long-Arm Statute permits
                and the exercise of jurisdiction complies with Due Process of Law .................. 11

                1.      The Delaware Long-Arm Statute grants this Court
                        jurisdiction over Apotex ....................................................... 12
                        (a)     There is specific jurisdiction in Delaware due to
                                Apotex's direct contacts with the State that are the
                                basis for this lawsuit................................................. 13

(1)   Apotex voluntarily sent its required ANDA Notice Letter to Pfizer's Delaware Counsel that served as the basis for Pfizer bringing this lawsuit ............................................................................ 14

(2)   Apotex has caused a tort in Delaware by injuring Pfizer with its ANDA submission ...................... 15

(b)   There is general jurisdiction in Delaware over Apotex ................ 16

(1)   Apotex transacts business in Delaware through its history of ANDA litigation in this Court ................................................................................ 17

(i)    *ANDA litigation is Apotex's regular business activity* .................................................... 17

(ii)   *Apotex is conducting its ANDA litigation business in Delaware* ........................... 20

(2)   Apotex continuously and systematically sells its generic medicines in Delaware .................................... 22

B.    Pfizer is entitled to jurisdictional discovery to support its opposition of Apotex's Motion to Dismiss............................................................................ 26

VI.   CONCLUSION............................................................................................ 27

## TABLE OF AUTHORITIES

**Cases**

*3D Systems Inc. v. Aarotech Labs., Inc.,*
    160 F.3d 1373 (Fed. Cir. 1998)..................................................................................... 25

*Acrison, Inc. v. Control & Metering Ltd.,*
    730 F. Supp. 1445 (N.D. Ill. 1990) .............................................................................. 15

*Andrx Pharms., Inc. v. Biovail Corp.,*
    276 F.3d 1368 (Fed. Cir. 2002)................................................................................. 8, 17

*Applied Biosystems, Inc. v. Cruachem, Ltd.,*
    772 F. Supp. 1458 (D. Del. 1991) ........................................................................... 15, 16

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
    21 F.3d 1558 (Fed. Cir. 1994)........................................................................... 11, 15, 16

*Boone v. Oy Partek Ab,*
    724 A.2d 1150 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998) ...................... 12, 14

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985).................................................................................................... 13

*Colonial Mortgage Serv. Co. v. Aerenson,*
    603 F. Supp. 323 (D. Del. 1985)............................................................................. 22, 25

*Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A.,*
    723 F.2d 357 (3d Cir. 1983)........................................................................................ 26

*Deprenyl Animal Health, Inc. v. University of Toronto Innovations Found.,*
    297 F.3d 1343 (Fed. Cir. 2002).................................................................................... 16

*Eli Lilly & Co. v. Mayne Pharma (USA) Inc.,*
    504 F. Supp. 2d 387 (S.D. Ind. 2007) .......................................................................... 24

*Fraley v. Chesapeake & Ohio Ry. Co.,*
    397 F.2d 1 (3d Cir. 1968)............................................................................................ 26

*Helicopteros Nacionales de Colombia S.A. v. Hall,*
    466 U.S. 408 (1984)......................................................................................... 14, 16, 25

*Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.,*
    611 A.2d 476 (Del. 1992) ........................................................................................... 12

*Hildebrand v. Steck Mfg. Co., Inc.,*
    279 F.3d 1351 (Fed. Cir. 2002)......................................................................... 11, 12, 24

*Hill v. Equitable Trust Co.*,
    562 F. Supp. 1324 (D. Del. 1983)..............................................................23, 24

*Honeywell, Inc. v. Metz Apparatewerke*,
    509 F.2d 1137 (N.D. Ill. 1975) ....................................................................15

*ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*,
    147 F. Supp. 2d 268 (D. Del. 2001)...............................................................12

*Inamed Corp. v. Kuzmak*,
    249 F.3d 1356 (Fed. Cir. 2001)......................................................................25

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..............................................................................12, 25

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984)....................................................................................16

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*,
    232 F.3d 1369 (Fed. Cir. 2000)......................................................................23

*Merck & Co. v. Barr Labs., Inc.*,
    179 F. Supp. 2d 368 (D. Del. 2002)...............................................................22

*Mobil Oil Corp. v. Advanced Envt'l Recycling Techs., Inc.*,
    833 F. Supp. 437 (D. Del. 1993)....................................................................13

*Mylan Pharms., Inc. v. Thompson*,
    268 F.3d 1323 (Fed. Cir. 2001)...................................................................9, 17

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1977)....................................................................................26

*Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*,
    685 A.2d 724 (Del. Super. 1996)...................................................................14

*Perkins v. Benguet Consol. Min. Co.*,
    342 U.S. 437 (1952)....................................................................................16

*Pfizer Inc. v. Ranbaxy Labs. Ltd.*,
    405 F. Supp.2d 495 (D. Del. 2005).............................................................6, 7

*Silent Drive, Inc. v. Strong Indus., Inc.*,
    326 F.3d 1194 (Fed. Cir. 2003)......................................................................13

*Transportes Aereos de Angola v. Ronair, Inc.*,
    544 F. Supp. 858 (D. Del. 1982)....................................................................13

*Waters v. Deutz Corp.*,
    460 A.2d 1332 (Del. Super. 1983) ................................................................. 13

*Wright v. American Home Prods. Corp.*,
    768 A.2d 518 (Del. Super. 2000) .................................................................. 22

*Zeneca Ltd. v. Mylan Pharms., Inc.*,
    173 F.3d 829 (Fed. Cir. 1999) ......................................................... 11, 15, 16

## <u>Statutes</u>

8 Del. C. § 383 .................................................................................................. 9

10 Del. C. § 3104(c) ..................................................... 12, 13, 14, 16, 17, 26

21 U.S.C. § 355(j) ............................................................................................. 6

21 U.S.C. § 355(j)(2)(A)(vii)(IV) .................................................................. 21

21 U.S.C. § 355(j)(2)(B) .............................................................................. 3, 6

21 U.S.C. § 355(j)(2)(B)(i) ............................................................................ 16

21 U.S.C. § 355(j)(5)(B)(iii) .......................................................................... 21

21 U.S.C.§ 355(j)(5)(B)(iv) ........................................................................... 21

21 U.S.C. § 355(j)(5)(C) .................................................................................. 7

24 Del. C. § 2540 .............................................................................................. 8

35 U.S.C. § 271(a) .......................................................................................... 17

35 U.S.C. § 271(e)(1) ...................................................................................... 20

35 U.S.C. § 271(e)(2) ................................................................................ 17, 18

35 U.S.C. § 271(e)(2)(A) .......................................................................... 1, 6, 16

## I.    INTRODUCTION

Plaintiffs Pfizer Inc., Pfizer Ireland Pharmaceuticals, Warner-Lambert Company, and Warner-Lambert Company LLC (collectively "Pfizer" or "Plaintiffs") hereby oppose defendant Apotex Inc.'s. ("Apotex" or "Defendant") Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (hereinafter "Motion to Dismiss") (D.I. 9). Co-defendant Apotex Corp., a Delaware entity, did not join Apotex in the Motion to Dismiss, but it also did not plead to Pfizer's complaint, leaving it in default. Regardless, the exercise of personal jurisdiction over Apotex meets the requirements of both the Delaware Long-Arm Statute and the Due Process Clause of the United States Constitution.

By this motion to dismiss, the Apotex entities persist in their manipulation of the judicial process, picking and choosing courts and judges to suit their purposes. However, there comes a point when this conduct both specifically and generally impacts the citizens of Delaware to such an extent that Apotex's selective evasions of Delaware courts must end. As we demonstrate, this point has now been reached. Consequently, Apotex's Motion to Dismiss should be denied and this case should proceed in Delaware.

## II.    NATURE AND STAGE OF THE PROCEEDING

Pfizer filed the instant complaint against Apotex Inc. and Apotex Corp. in Delaware on December 17, 2008 (the "Delaware Action"). (D.I. 1). Apotex Inc. is a Canadian corporation and Apotex Corp. is a Delaware corporation, having been incorporated in Delaware since 1992. The Delaware Action alleged that Apotex's Abbreviated New Drug Application ("ANDA") No. 90-548 for atorvastatin calcium tablets infringed Pfizer's U.S. Patent No. 5,273,995 ("the '995

patent") pursuant to 35 U.S.C. § 271(e)(2)(A) (D.I. 1, ¶¶ 13-33). The '995 patent claims are directed, *inter alia*, to atorvastatin.[1] (D.I. 1, ¶¶ 1, 2, 10, 33).

On December 17, 2008, after the Delaware Action was filed, Pfizer also filed a second suit against Apotex in the Northern District of Illinois alleging the same cause of action as in the Delaware Action. *Pfizer Inc., et al. v. Apotex Inc., et al.*, No. 1:08-cv-07231 (Dow) (the "Illinois Action"). (Mulveny Decl. at ¶ 2, Ex. A). Pfizer commenced the Illinois Action as a protective measure to maintain an infringement suit against Apotex in the event that Apotex contested personal jurisdiction in Delaware. (Mulveny Decl. at ¶ 2, Ex. A). Pfizer fully recognizes, and so informed Apotex before Apotex filed the instant motion, that only one of these suits should actually be litigated, *i.e.*, the Delaware Action.

Both Apotex defendants answered the Illinois Action on February 9, 2009. (Mulveny Decl. at ¶ 3, Ex. B). Both Apotex defendants also filed counterclaims for declaratory judgment of noninfringement and invalidity with their Answer in the Illinois Action. (Mulveny Decl. at ¶ 3, Ex. B). Pfizer has advised Apotex that it intends to move to dismiss certain of Apotex's counterclaims in the Illinois Action for, among other reasons, lack of subject matter jurisdiction. The Court in the Illinois Action has scheduled a status conference on March 24, 2009. No further activity has occurred in the Illinois Action.

Meanwhile, in lieu of filing an Answer in the Delaware Action, Apotex Inc. filed this Motion to Dismiss as well as an Alternative Motion to Transfer Venue, or Alternatively, to Stay These Proceedings ("Transfer Motion"). (D.I. 11), and Apotex Corp. has inexplicably failed to file an answer.  It is noted that because Apotex Corp. is a Delaware corporation, there is no question about jurisdiction over it.

---

[1] Atorvastatin is a potent cholesterol lowering drug. Pfizer sells atorvastatin, in the form of its calcium salt, under the brand name Lipitor®. Lipitor® is and has been for many years, the world's best selling drug, with annual sales, world-wide, exceeding $12 billion dollars.

Pfizer has asked whether Apotex would agree to dismiss the Illinois Action if the Motion to Dismiss and the Transfer Motion were denied by this Court. Apotex refused. Thus, Pfizer has advised Apotex that it will file a motion to stay the Illinois case pending resolution of Apotex Inc.'s motion to dismiss for lack of personal jurisdiction. (Mulveny Decl. at ¶ 4, Ex. C). If this motion is denied, then Pfizer will file a motion to transfer or permanently stay the Illinois Action.

Presently before this Court is Apotex's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction ("Motion to Dismiss"). (D.I. 9). In support of its Motion to Dismiss, Apotex filed an opening brief ("OpenBr") (D.I. 10). Apotex Corp. does not contest jurisdiction and Apotex Inc. acknowledges in public pronouncements that it ships millions of dollars of drugs into the United States every year through Apotex Corp. Because this Court has personal jurisdiction to hear this case, Apotex's Motion to Dismiss should be denied.

## III.    SUMMARY OF ARGUMENT

1.      Apotex's ANDA submission creates what has been called a "highly artificial" act of patent infringement. No actual infringement has yet occurred because Apotex does not have FDA approval to sell its copy of Lipitor®. Thus, at this time, there is no product actually being imported, made, used, or sold in the United States pursuant to the ANDA. Nonetheless, Apotex's patent infringement, while fictional in nature, creates a real and serious harm to Pfizer, a Delaware corporation. This harm thus occurs in Delaware. Apotex's ANDA submission is the sole and only basis for this litigation.

2.      As required by statute, Apotex notified Pfizer of its patent infringement by written letter pursuant to 21 U.S.C. § 355(j)(2)(B) ("ANDA notice letter"). (D.I. 1, Ex. C). Apotex sent its ANDA notice letter not only to Pfizer's headquarters in New York, but also to Pfizer's outside counsel in Wilmington, Delaware. (D.I. 1, Ex. C, at p. 1). By law, Apotex's ANDA

3

notice letter gave Pfizer the basis to bring this lawsuit and the letter was an essential part of Apotex's ANDA. Thus, Apotex knowingly and voluntarily created contacts with Delaware as an integral part of its ANDA submission which contained a purported offer of confidential information to Pfizer's outside counsel. This act is directly related to this lawsuit. The statutorily mandated notice letter was intended by Apotex to trigger Hatch-Waxman Act provisions. This activity supports specific jurisdiction in Delaware.

3.     Patent infringement is a tort, and Apotex's ANDA submission constitutes a tort against Pfizer. Because Pfizer is a Delaware corporation, the tort has occurred in Delaware, the only place where the harm has occurred. No other act in the United States -- apart from Apotex's self-serving appointment of its litigation counsel to be its agent in Illinois -- provides any court with personal jurisdiction to hear this case. Apotex's ANDA submission supports specific jurisdiction in Delaware.

4.     Apotex is a Canadian company claiming it has no physical presence in the United States. Apotex's only business is generic medicines. A necessary part of Apotex's business is submitting ANDAs to the FDA seeking approval to sell copies of established pioneer drugs. Another critical part of Apotex's operation is challenging the patent coverage (where applicable) on those medicines as permitted by the ANDA statute. In carrying out its business of generic medicines, Apotex has litigated its ANDAs in this Court many times in the past few years. And it has continuously and systematically availed itself of the legal protections of the State of Delaware by filing claims and counterclaims affirmatively seeking relief in other prior actions in this Court. This activity supports general jurisdiction in Delaware.

5.     A significant amount of Apotex's generic medicines are sold in Delaware and, on information and belief, Apotex derives substantial income from sales in this State. By one

measure, its sales in 2008 alone exceeded $2.8 million.  This activity supports general jurisdiction in Delaware.

6.    Apotex's substantial contacts with Delaware -- contacts both related to this case and contacts in general -- are such that exerting jurisdiction over Apotex does not offend traditional notions of fair play and substantial justice. To the contrary, permitting Apotex to conduct its substantial business in Delaware from behind the Canadian border while causing harm to Pfizer -- a Delaware corporation -- yet denying Pfizer's redress in the Delaware Court, all for the benefit of Apotex, is an affront to fair play and substantial justice. Here, Apotex has reached from Canada into Delaware to infringe Pfizer's United States patent yet, in an effort to manipulate or game the ANDA system, Apotex now claims in this case that it can only be sued in the jurisdiction of its own choice -- the Northern District of Illinois -- where it has authorized only one entity -- its litigation counsel in Chicago, Illinois -- as its agent for accepting service of process. Indeed, Apotex's only contact with Illinois is its litigation counsel.  Had Apotex been driving a car in Delaware and hit a Delaware resident, there would be no question that this Court has personal jurisdiction. The fictional nature of Apotex's infringement does not mitigate the real and serious harm to a Delaware resident in this case and Apotex should not be permitted to harm Delaware residents without also being subject to jurisdiction in Delaware.

## IV.    FACTUAL BACKGROUND

### A.    Apotex's ANDA is the sole basis for this lawsuit

This lawsuit centers on Apotex's ANDA directed to the prescription drug atorvastatin. (OpenBr at 6). Pfizer is the sole holder of the FDA approval to sell atorvastatin in the United States which it sells in the form of a calcium salt under the trademark Lipitor®. (D.I. 1, ¶¶ 3-10). And Pfizer is the owner of U.S. Patent No. 5,273,995 ("the '995 patent") which claims, *inter*

*alia*, atorvastatin. (D.I. 1, ¶ 10). Apotex's infringement of Pfizer's '995 patent is the sole basis for this lawsuit. (D.I. 1, ¶ 1).[2]

Apotex filed its Abbreviated New Drug Application ("ANDA") with the FDA seeking approval to sell generic atorvastatin calcium tablets before the expiration date of the '995 patent. (D.I. 1, ¶¶ 13-14; OpenBr at 1). In its ANDA, Apotex provided a "Paragraph IV" certification that Apotex's proposed generic medicine would not infringe certain of Pfizer's patents and that certain of Pfizer's patents are invalid. (D.I. 1, Ex. C; OpenBr at 1).

Apotex's submission of its ANDA for generic atorvastatin tablets under 21 U.S.C. § 355(j) infringed Pfizer's patents pursuant to 35 U.S.C. § 271(e)(2)(A).

**B.      Apotex's ANDA Notice Letter, which is a critical part of its ANDA and serves as the basis for Pfizer to bring this lawsuit, was sent to Pfizer's Delaware counsel in Wilmington, Delaware**

As part of its ANDA, Apotex was required to notify Pfizer of the submission in what is called a "ANDA notice letter". 21 U.S.C. § 355(j)(2)(B). In its ANDA notice letter, Apotex stated as the basis for its Paragraph IV certification that its proposed generic atorvastatin product would not infringe Pfizer's patents and that Pfizer's patents are invalid as well. (*Id.*). Apotex voluntarily sent its ANDA notice letter, as required by § 355(j)(2)(B), to Pfizer's Delaware counsel, Robert G. McMorrow, Jr. (D.I. 1, Ex. C; OpenBr at 1; and Tao Decl. Ex. A [ANDA notice letter]).[3] Pursuant to § 355(j)(5)(C), Apotex's ANDA notice letter contained an offer of confidential access that is required if Apotex were to assert a declaratory judgment action against

---

[2] Other generic drug companies have also sought to copy Lipitor® by filing ANDAs seeking FDA approval to sell generic atorvastatin tablets before the '995 patent expires. Pfizer has sued such companies all in Delaware. (Mulveny Decl. ¶¶ 5 - 8, Exs. D – G). One such case has gone to trial and is reported as *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, 405 F. Supp. 2d 495 (D. Del. 2005) (Mulveny Decl. ¶ 5, Ex. D).

[3] Apotex's assertion that "nothing, repeat nothing, concerning that ANDA, or anything else giving rise to this action occurred anywhere near Delaware" is belied by the fact that Apotex sent its ANDA notice letter to Pfizer's Delaware counsel, Robert G. McMorrow. (*compare* D.I. 1, Ex. C and OpenBr at 11). Apotex also leaves out Delaware from the places where it sent its ANDA notice letter in stating that it was sent only to "New York, New Jersey, and Michigan" by Apotex's outside counsel. (OpenBr at 11).

Pfizer. (Tao Decl. Ex. A at 3). The offer of confidential access was limited to attorneys from one

outside law firm representing Pfizer. (*Id.*). Presumably, Apotex sent its ANDA notice letter to

Pfizer's Delaware counsel, Mr. McMorrow, in an effort to extend the offer of confidential access

to Mr. McMorrow and thus satisfy § 355(j)(5)(C).

Upon receipt of Apotex's ANDA notice letter, Pfizer brought this lawsuit against Apotex

and its Delaware entity -- Apotex Corp. -- in the District of Delaware for infringement of the

'995 patent.[4] In filing that suit, Pfizer designated two pending cases in Delaware against Teva

Pharmaceuticals -- also involving an ANDA for atorvastatin and the infringement of the '995

patent -- as related cases. (*See* D.I. 1 Civil Cover Sheet; Mulveny Decl. at ¶¶ 6-7, Exs. E-F).

Moreover, Pfizer brought suit in Delaware also because this Court had already decided a dispute

over an ANDA filed by Ranbaxy Laboratories Ltd., *et al.* for generic atorvastatin which

infringed the '995 patent (Ranbaxy's ANDA also infringed another Pfizer patent that Apotex is

not challenging in its ANDA). *See Pfizer Inc. v. Ranbaxy Labs. Ltd.*, CA 03-209 (JJF), 405 F.

Supp. 2d 495 (D. Del. 2005) (Mulveny Decl. at ¶ 5, Ex. D). Pfizer filed additional suits in the

Delaware court for infringement of the '995 patent due to ANDAs filed by Cobalt

Pharmaceuticals, CA 07-790 (JJF), now resolved by settlement. (Mulveny Decl. at ¶ 8, Ex. G).

This case is therefore the fourth suit filed by Pfizer in Delaware on the '995 Lipitor patent.

### C.    Apotex's business is generic medicines and as part of this business it regularly sells these medicines in Delaware

Apotex's business is generic medicines. (OpenBr at 6). Apotex is a Canadian company

that manufactures and sells generic drugs worldwide through its Apotex Group of companies.

---

[4] Apotex Corp. is a Delaware corporation. (Mulveny Decl at ¶ 20 Ex. S), and Apotex's present contention that
Apotex Corp. has no involvement in this litigation, (*see* OpenBr at 6), is belied by the fact that Apotex Corp. joined
Apotex Inc. in filing a counterclaim for declaratory judgment against Pfizer in the Northern District of Illinois. Thus,
Apotex's present contention that Apotex Corp. has no involvement in Apotex's ANDA for generic atorvastatin does
not match the actions of its Delaware affiliate in Illinois. (Mulveny Decl. ¶3, Ex. B [*Pfizer Inc. v. Apotex Inc. et al.*,
CA 1:08-07231 (Dow) D.I. 31, at pp. 11-14]). Pfizer has not had discovery and thus is unable to confirm Apotex
Corp.'s participation in this ANDA and its filing.

(OpenBr at 6; *see also* Mulveny Decl. at ¶ 9, Ex. H at 1). Apotex Inc. proclaims to be "the largest Canadian-owned pharmaceutical company," and "has grown to employ over 6,800 people in research, development, manufacturing and distribution facilities world-wide." (Mulveny Decl. at ¶ 9, Ex. H at 1). From its inception, Apotex Inc. was set up to manufacture generic drugs for export into the United States: "This site [Etobicoke Canada] established in 1993 to service the US market" (*Id.* at 2), and further, as set forth on the Apotex Corp. website, "Apotex Corp. is the US company that markets the product of Apotex Inc." (Mulveny Decl. at ¶ 19, Ex. R).  Apotex has repeatedly admitted that its generic medicines have been continuously and systematically sold in Delaware.[5]  In addition, Apotex Corp. is registered with the Delaware Board of Pharmacy as a "Distributor/Manufacturer CSR" and "Pharmacy-Wholesale" pursuant to 24 Del. C. § 2540. (Mulveny Decl. at ¶ 18, Ex. Q).  Very plainly, Apotex Corp. is acting as the representative and agent of Apotex Inc. to effect these sales in Delaware.

> **D.**    **In carrying out its business of selling generic medicines in the United States, Apotex Inc. also conducts substantial business in Delaware by litigating patents to obtain FDA approval and it has frequently availed itself of Delaware Courts by filing counterclaims**

A *generic* drug company's need to litigate patents covering FDA-approved branded drug products is the central feature of its business model. Following the rights, requirements, and procedures of the Hatch-Waxman Act, including all its enabling regulations, the *sine qua non* of companies like Apotex Inc. is the litigation of patents owned by branded drug companies. *See Andrx Pharms., Inc. v. Biovail Corp.*, 276 F.3d 1368, 1370-71 (Fed. Cir. 2002) (explaining

---

[5] (Mulveny Decl. at ¶ 11, Ex. J) (Apotex Inc. Answer to Sanofi-Aventis Complaint) at ¶3 (admitted that "Apotex Inc. manufactures numerous drugs that are sold and used in [Delaware]"); (Mulveny Decl. at ¶ 12, Ex. K) (Apotex Inc. Answer to Senju Complaint) at ¶8 (admitted that "Apotex Inc. manufactures numerous drug products for sale and use in the United States including [Delaware]"); (Mulveny Decl. at ¶ 13, Ex. L) (Apotex Inc. Answer to Allergan Complaint) at ¶4 (admitted that "Apotex, Inc. [sic] manufactures generic drugs for sale and use throughout the United States, including [Delaware]"); (Mulveny Decl. at ¶ 14, Ex. M) (Apotex Inc. Answer to MedPointe 2007 Complaint) at ¶3 (admitted that "Apotex Inc. manufactures numerous generic drugs for sale and use throughout the United States, including in [Delaware]"); (Mulveny Decl. at ¶ 15, Ex. N) (Apotex Inc. Answer to Medpointe 2006 Complaint) at ¶3 (admitted that "Apotex Inc. manufactures generic drug products that are approved by the [FDA] and that the approved drug products are sold in the United States.").

8

Hatch-Waxman Act scheme); *Mylan Pharms., Inc. v. Thompson*, 268 F.3d 1323, 1325-27 (Fed. Cir. 2001) (same).

Thus, over the last six years, in Delaware alone, Apotex Inc. has been a party to nine other ANDA-related patent suits. (Mulveny Decl. ¶¶ 10-17, Exs. I-P). In one, Apotex Inc. was a plaintiff in a declaratory judgment suit. (Mulveny Decl. ¶ 10, Ex. I). In seven of the remaining Delaware cases (the eighth was dismissed before the Answer was filed), Apotex Inc. answered the Complaint, raised Counterclaims, and never challenged personal jurisdiction. (Mulveny Decl. ¶¶ 11-17, Exs. J-P). Apotex thereby affirmatively sought relief in Delaware courts[6]. Moreover, in February of 2009, after filing its present motion contesting this Court's personal jurisdiction over it, Apotex Inc. nevertheless again consented to personal jurisdiction in this District. (Mulveny Decl. ¶ 16, Ex. O). In addition, Apotex Inc. has recently, unequivocally admitted in another ANDA patent case that personal jurisdiction over it was proper in this District. (Mulveny Decl. ¶ 13, Ex. L at ¶ 8.) In these nine other cases, Apotex Inc. engaged the services of various Delaware law firms to represent it and repeatedly entered this State to further its primary business activity before this Court. (Mulveny Decl. ¶¶ 10-17, Exs. I-P).

### E.    Apotex attempts to avoid jurisdiction in Delaware by designating its Chicago, Illinois litigation counsel to be its agent for service of process

By its own admission, Apotex is a Canadian corporation, allegedly with all of its facilities and offices located in Canada. (OpenBr at 1, 6). Apotex contends that it conducted all of the underlying activities leading up to its instant ANDA filing in Canada. (*Id.*). Further, Apotex contends that, if its ANDA is approved by the FDA, it will not be directly selling generic

---

[6]   Under 8 Del. C. § 371, Apotex Inc. was required to qualify as a foreign corporation to do business in Delaware by making the required filings with the Secretary of State of Delaware. Under 8 Del. C. § 383, Apotex Inc. was required to comply with § 371 in order to file and maintain these counterclaims.

atorvastatin in the United States. (*Id.*). In fact, Apotex alleges that everything supporting its ANDA occurred in Canada. (*Id.*).

According to Apotex its only contacts with the United States in connection with its ANDA are: (1) designating an agent in Chicago, Illinois -- its litigation counsel; (2) submitting or causing the submission of the actual ANDA to the FDA's offices in Maryland; and (3) sending Apotex's ANDA notice letter to Pfizer (and its Delaware counsel).

### F.    Apotex has selectively designated its agent in Chicago, Illinois for this case

Apotex's has not consistently designated its Chicago litigation counsel as the agent for service of process regarding each individual ANDA it has submitted to the FDA. Instead, Apotex designates different agents for reasons known only to itself and thus tries to steer the resultant litigation to specific District Courts, on a case-by-case basis. If sued in a different jurisdiction, as here, Apotex either accepts that Court or denies that the Court has personal jurisdiction and seeks to transfer. (*See* Apotex's Transfer Motion, D.I. 11). In short, claiming to act only outside of the United States, Apotex seeks through the designation of different agents in different locations for different ANDAs to manipulate the United States Judicial System to its own benefit, while denying the injured pioneer drug company the right to litigate where the injury occurred[7].

### G.    Pfizer filed an identical protective suit in the Northern District of Illinois and has moved to stay that suit pending resolution of Apotex's Motion to Dismiss

Because Apotex identified its litigation counsel in Chicago, Illinois to be its only agent for service of process regarding the instant ANDA, Pfizer filed a protective suit in the Northern District of Illinois alleging the same cause of action as this case. Pfizer never intended that both cases would proceed simultaneously, and so informed Apotex's counsel, before the instant motion was filed. Apotex is correct that an Answer and Counterclaims were filed in that action. The scheduling conference in Illinois has now been scheduled for March 24, 2009.  This Illinois

---

[7]    For example, Apotex has been a party to litigations in, *inter alia*, Delaware, California, New Jersey, New York, Virginia, Texas, Illinois, Indiana and Florida.

case was filed due to Apotex's well-known game of jurisdiction Whac-A-Mole that it plays with its ANDA submissions in the United States.

Because Pfizer believes that jurisdiction is proper in Delaware, Pfizer has filed a motion to stay the action in the Northern District of Illinois pending resolution of Apotex's Motion to Dismiss. The existence of the Northern District of Illinois lawsuit has no bearing on the determination as to whether this Court has jurisdiction over Apotex Inc.

## V.    ARGUMENT

While the Supreme Court views the tortious act of filing an ANDA application as "highly artificial", this does not change the fact that the ANDA filing is a "real act" with "actual" and "serious" consequences. *Zeneca Ltd. v. Mylan Pharms., Inc.*, 173 F.3d 829, 833-34 (Fed. Cir. 1999). Apotex's ANDA filing, seeking approval to market Lipitor® before expiration of Pfizer's applicable patents, clearly gives Pfizer the right to bring a lawsuit in a federal district court for the tort of patent infringement. The question at hand, therefore, is *where* can Pfizer bring a lawsuit seeking redress for Apotex's tort?

The answer is Delaware.

This Court has jurisdiction over Apotex because the Delaware's Long-Arm Statute, 10 Del. C. § 3104(c) permits it and the exercise of jurisdiction over Apotex meets all Constitutional requirements for due process.

### A.    Jurisdiction is proper when Delaware's Long-Arm Statute permits and the exercise of jurisdiction complies with Due Process of Law

In a patent dispute, Federal Circuit law controls the personal jurisdiction analysis. *Hildebrand v. Steck Mfg. Co.,* 279 F.3d 1351, 1354 (Fed. Cir. 2002) (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65 (Fed. Cir. 1994)). The Federal Circuit follows the two-part test established by the Supreme Court. *Hildebrand*, 279 F.3d at 1355. Under

11

this test, personal jurisdiction over an out-of-state defendant involves two inquiries: (1) whether

the forum's long-arm statute confers jurisdiction; and (2) whether the assertion of personal

jurisdiction comports with Constitutional requirements for due process. *Hildebrand*, 279 F.3d at

1355 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

    **1.    The Delaware Long-Arm Statute grants this Court jurisdiction over Apotex**

    The Delaware long-arm statute has been construed to provide jurisdiction to the

maximum extent possible in order to provide residents a means to redress against those not

subject to personal service within the State. *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1156-57

(Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998). The Delaware Supreme Court has construed

the long-arm statute broadly to confer jurisdiction to the maximum extent possible under the Due

Process Clause. *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480 (Del.

1992). However, "the Delaware Supreme Court has not collapsed the analysis under the

Delaware long-arm statute into the constitutional due process analysis." *ICT Pharms., Inc. v.

Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268, 271 n.4 (D. Del. 2001).

    The Delaware statute, 10 Del. C. § 3104(c) provides:

    (c)    As to a cause of action brought by any person arising from any of the acts enumerated in this section, *a court may exercise personal jurisdiction over any nonresident*, or a personal representative, *who in person or through an agent*:

        (1)    *Transacts any business or performs any character of work or service in the State*;

        (2)    Contracts to supply services or things in this State;

        (3)    *Causes tortious injury in the State by an act* or omission *in this State*;

        (4)    Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any persistent course of conduct in the State or *derives substantial revenue from services, or things used or consumed in the State*....

10 Del. C. § 3104(c) (emphasis added). The Delaware Courts have also held that the statute is to

be construed liberally, thus favoring the exercise of jurisdiction. *Waters v. Deutz Corp.*, 460 A.2d

1332, 1335 (Del. Super. 1983); *Mobil Oil Corp. v. Advanced Envt'l Recycling Techs., Inc.*, 833

F. Supp. 437, 443 (D. Del. 1993). Federal courts in this district, moreover, have given an

expansive interpretation to the long arm statute, ruling that § 3104(c) must be construed as

conferring jurisdiction to the maximum perimeters of the due process clause. *Transportes Aereos*

*de Angola v. Ronair, Inc.*, 544 F. Supp. 858, 864 (D. Del. 1982).

Delaware's Long-Arm Statute is a "single act" statute, meaning that jurisdiction can be

imposed on a non-resident defendant who engages in a single transaction in the forum state.

*Transportes Aereos de Angola*, 544 F. Supp. at 864. Here, Apotex has committed acts directly

related to this lawsuit in Delaware which confer jurisdiction over it under the "specific

jurisdiction" theory.

> **(a)      There is specific jurisdiction in Delaware due to Apotex's direct contacts
> with the State that are the basis for this lawsuit.**

When a non-resident defendant's contacts with the forum state are related to or give rise

to the cause of action, a court may exercise what is called "specific jurisdiction". The court can

assert specific jurisdiction over a nonresident defendant that has "'*purposefully directed' his*

*activities at residents of the forum* and the litigation results from alleged injuries that 'arise out of

or related to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)

(emphasis added, citations omitted). Unlike the standard for claims of general jurisdiction, due

process does not require a plaintiff asserting specific jurisdiction to show that a defendant's

contacts with the forum state are "continuous and systematic." Indeed, the Federal Circuit has

acknowledged that specific jurisdiction may be based on a defendant's "isolated or sporadic"

activity within the forum state. *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200

(Fed. Cir. 2003) (citing *Burger King*, 471 U.S. at 472-73).

13

Delaware state courts have interpreted section 3104(c)(1) to be a specific jurisdiction provision of the Delaware long-arm statute. *Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. Super. 1996). Specific jurisdiction requires that there be a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1155 (Del. Super. 1997). Accordingly, to show specific jurisdiction over Apotex, Pfizer need only show that Apotex specifically directed its activity at a Delaware resident and that this claim arises out of that activity. As shown below, this Court has specific jurisdiction over Apotex for at least two reasons.

### (1) Apotex voluntarily sent its required ANDA Notice Letter to Pfizer's Delaware Counsel that served as the basis for Pfizer bringing this lawsuit

First, by knowingly and voluntarily sending its ANDA notice letter to Pfizer's Delaware counsel, Robert G. McMorrow, Jr., Apotex has conducted a necessary part of its business of seeking FDA approval for generic atorvastatin in the State of Delaware. 21 U.S.C. § 355(j)(2)(B)(i) ("An applicant ... shall include in the application a statement that the *applicant will give notice as required* by this subparagraph.") (emphasis added). This act, an integral part of Apotex's infringement, is directly connected to the dispute at hand because the ANDA notice letter provides Pfizer the grounds to bring suit against Apotex. The notice letter also contained an offer of confidential information to Pfizer's outside counsel. The offer, if in proper form, is intended to enable Apotex to maintain a counterclaim against Pfizer. The notice letter provides a basis for this Court's jurisdiction over Apotex pursuant to 10 Del. C. § 3104(c)(1).

14

(2)    **Apotex has caused a tort in Delaware by injuring Pfizer with its ANDA submission**

Second, Apotex's filing of its ANDA is an act of infringement. 35 U.S.C. § 271(e)(2)(A).

This act of infringement is a tort. *Zeneca*, 173 F.3d at 832. And this tort also occurred in

Delaware. *See Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1468 (D. Del.

1991) ("The situs of the injury of patent infringement ... is the place of the patent holder's

residence."); *Acrison, Inc. v. Control & Metering Ltd.*, 730 F. Supp. 1445, 1448 (N.D. Ill. 1990)

("Damage to intellectual property rights (infringement of a patent, trademark or copyright) by

definition takes place where the *owner* suffers the damage."); *and see Honeywell, Inc. v. Metz*

*Apparatewerke*, 509 F.2d 1137, 1142 (N.D. Ill. 1975) ("[I]t is now well settled that the term

'tortious act' inevitably includes the concept of injury, and ... the situs of the tort is the place

where the injury occurs). Thus, because Pfizer is a Delaware corporation, Apotex's ANDA

submission caused tortious injury in Delaware and confers jurisdiction over Apotex pursuant to

10 Del. C. § 3104(c)(3).

While the Federal Circuit in *Beverly Hills Fan* disagreed with the theory that the situs of

injury from patent infringement is where the patentee resides and found jurisdiction where the

infringing sale occurred, *see Beverly Hills Fan*, 21 F.3d at 1570-71, the Federal Circuit's

decision in *Beverly Hills Fan* is limited to "traditional" patent infringement under 35 U.S.C. §

271(a) and cannot be extended to the "highly artificial" infringement created by § 271(e)(2) that

is the subject of this case. *Beverly Hills Fan*, 21 F.3d at 1571 (holding "*in a case such as this*, the

situs of the injury is the location of the infringing sales in Virginia.") (emphasis added). Here,

there has been no actual infringing sale by Apotex in the United States (because Apotex lacks

FDA approval), only the "highly artificial" infringement under § 271(e)(2). Thus, the holding of

*Beverly Hills Fan* is not dispositive of the jurisdictional analysis in this case. Further, the Federal

Circuit's ruling in *Beverly Hills Fan*, which suggests the ANDA infringement would occur at the

FDA's offices in Maryland, is in tension with the Court's holding in *Zeneca* that the ANDA

submission does not create personal jurisdiction to bring suit under § 271(e)(2) in the district

where the FDA's offices are located. *Zeneca*, 173 F.3d at 831 (holding that the ANDA

submission at the FDA's offices does not count as a personal jurisdiction contact due to the

government contacts exception). In fact, the Federal Circuit's *Zeneca* decision recognizes that

the traditional patent infringement jurisdictional analysis does not apply to the patent

"infringement" arising in ANDA cases. *Zeneca*, 173 F.3d at 833 (finding that "traditional

infringing activity no longer counts as infringing under the [ANDA statute]."). In the absence of

any controlling Federal Circuit precedent (and in view of the conflicting precedent in *Zeneca*),

this Court's ruling in *Applied Biosystems* remains controlling. Accordingly, the patent

infringement created by Apotex's ANDA submission caused tortious injury in Delaware because

that is where Pfizer -- the patentee and NDA holder -- resides.

      **(b)**     **There is general jurisdiction in Delaware over Apotex**

     Even when the cause of action does not arise out of or relate to the foreign corporation's

activities in the forum State, due process is not offended by a State's subjecting the corporation

to its *in personam* jurisdiction when there are sufficient contacts between the State and the

foreign corporation. *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952); *see Keeton v.*

*Hustler Magazine, Inc.*, 465 U.S. 770, 779-780 (1984). General jurisdiction refers to the

authority of a court to hear any cause of action involving a defendant, even when the cause of

action has no relation to the defendant's contacts with the forum state. The defendant must have

"continuous and systematic" contacts with the forum state in order for a court to assert general

jurisdiction. *Helicopteros*, 466 U.S. at 414-16; *see also Deprenyl Animal Health, Inc. v.*

*University of Toronto Innovations Found.*, 297 F.3d 1343, 1350 (Fed. Cir. 2002) ("Where a

defendant's contacts are continuous and systematic, due process permits the exercise of general jurisdiction."). Apotex's continuous and systemic contacts with Delaware arise from its generic medicine business in two ways: (1) from Apotex's substantial ANDA litigation in Delaware that is necessary to obtain FDA approval to market its generic medicines; and (2) from actual sales of Apotex's generic medicines in Delaware.

### (1) Apotex transacts business in Delaware through its history of ANDA litigation in this Court

#### (i) ANDA litigation is Apotex's regular business activity

Apotex Inc. is one of the largest suppliers of generic drugs in the United States. Unlike other businesses where litigation is an occasional, unintended, and undesirable consequence of business activities, patent litigation is a regular and intended component of the ordinary business activities of companies seeking to sell their generic drug products in the United States. This business activity is an outgrowth of the legislative scheme, the "Hatch-Waxman Act,"[8] that regulates competitive activity between research-based pharmaceutical companies like Pfizer and generic drug companies like Apotex Inc.

The legislation contemplates that a research-based pharmaceutical company will conduct research and development to discover a new pharmaceutical product, seek to patent it, proceed to conduct lengthy and expensive human clinical trials to establish the safety and efficacy of the drug, and file a New Drug Application ("NDA") with the FDA. If approved, the innovator company will be given permission to market the new drug in the United States.

The Federal Circuit has described the Hatch-Waxman Act and the ANDA litigation procedure in *Andrx Pharms.*, 276 F.3d at 1370-71, and *Mylan*, 268 F.3d at 1325-27. As

---

[8] The Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984), *codified at* 21 U.S.C. §§ 355, 360cc, and 35 U.S.C. §§ 156, 271, 282, as amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat. 2066.

explained there, under the statute, a generic drug manufacturer is permitted to seek FDA approval to market a generic copy of an innovator's FDA-approved new drug without submitting results of its own long and expensive clinical testing of the innovator's product. The generic drug company must simply show that its proposed generic copy is bioequivalent, which generally means that the copy contains the same active substance, it will be given to patients in the same dosage form, and it will provide the same levels of active ingredient in the blood as the approved product. The generic manufacturer is allowed under statutory "safe-harbor" provisions to use the innovator's patented product in testing to generate data for FDA-submission. 35 U.S.C. § 271(e)(1).

The generic drug maker may file an ANDA containing bioequivalence data to seek FDA permission to market the generic copy upon expiration of the innovator's patent. A generic drug manufacturer may also seek FDA approval to market a generic copy of an approved, patented drug prior to expiration of all patents covering the drug. If the generic drug manufacturer seeks permission to market the generic copy before patent expiration, it may do so by certifying to the FDA that it will not infringe any valid and enforceable claim of the innovator's patent (a so-called "Paragraph IV" certification) and thereafter notifying the patent owner as required by the enabling regulations. 21 U.S.C. § 355(j)(2)(A)(vii)(IV). If, after receiving the Paragraph IV certification notice, the patent owner files suit for infringement within 45 days, the statute imposes an automatic 30-month stay of FDA approval of the ANDA to allow the court to resolve the patent issues. 21 U.S.C. § 355(j)(5)(B)(iii).

Lucrative rewards await generic drug companies making Paragraph IV certifications, and the companies have strong financial incentives to submit ANDAs having them. The reason is straightforward. Under the statute, the first generic drug manufacturer to file an ANDA having a

Paragraph IV challenge is awarded 180 days of generic marketing exclusivity if the challenge is successful and the generic product is launched prior to the expiration of the patent. 21 U.S.C. § 355(j)(5)(B)(iv).

The practice that has grown up under this legislative scheme is one where the patent on virtually every important new pharmaceutical product is challenged by one or more generic drug companies racing to file ANDAs having Paragraph IV certifications and actively litigating the patent validity, enforceability, and infringement issues in federal district court. Thus, whereas innovators like Pfizer gain access to new products through business activities conducted in the laboratory related to product development, generic drug makers like Apotex Inc. gain access to new products through business activities regularly, systematically, and foreseeably conducted in federal court.

The federal district court in Delaware is no stranger to this type of litigation. And it is no stranger to litigation involving Apotex, including numerous claims asserted by Apotex in counterclaims. Indeed, this Court has become a favored forum for this kind of litigation for plaintiffs and defendants alike. The preference arises from the historical reputation of judges in this district for excellence and sophistication in patent matters and this district's practice of bringing these matters to trial well before expiration of the 30-month stay of FDA approval. Not surprisingly, therefore, many generic drug companies that could challenge personal jurisdiction in this district choose instead to purposefully avail themselves of the benefits of litigating ANDA cases in Delaware by voluntarily appearing here and even filing counterclaims here.

Apotex Inc. has engaged in this activity in this district. Apotex has thus engaged in a regular component of their generic drug business -- ANDA litigation -- here in Delaware, and should, therefore, be found to be generally present in this district.

### (ii)    *Apotex is conducting its ANDA litigation business in Delaware*

Apotex's actual litigation decisions, public statements, and activities in Delaware courts -- all advancing its business interests by engaging in ANDA litigation -- amply illustrate the point. The filing of ANDAs seeking approval to market patented drugs before the applicable patents expire, with Paragraph IV certifications challenging the patents and the resultant federal court litigation are a key part of Apotex Inc.'s regular business activities.

As Apotex Inc.'s Chairman and Chief Executive Officer, Dr. Bernard Sherman, testified during a hearing before a committee of the United States House of Representatives:

> At Apotex, we believe generic companies should endeavor to bring generics to market at the earliest possible time, and that the legislative and regulatory framework should facilitate, not obstruct, early generic entry. Our record in advocating for such a public policy framework, from our support for a district court trigger for exclusivity rather than an appellate trigger, our pursuit of declaratory judgment actions, our efforts in the courts to vacate anti-competitive settlements, our pursuit of infringement verdicts even where there is no guaranteed benefit to us, and our opposition to patent settlements, is unique and unmatched among generic manufacturers.
>
> ***
>
> Year after year, Apotex has tirelessly litigated to bring products to market... .

(Mulveny Decl. ¶ 20, Ex. T (Protecting Consumer Access to Generic Drugs Act of 2007: Hearings on H.R. 1902 Before the Subcomm. on Commerce, Trade, and Consumer Protection of the House Comm. on Energy and Commerce, 110th Cong. (May 2, 2007) (statement of Barry Sherman, Chief Executive Officer of Apotex Inc.), *reprinted in* 2007 WL 1290291, at *1-2, 5).

As a 2002 published article observed:

> In a single word: litigation. Apotex is famous for suing anybody who tries to stop it selling [sic] a generic version of a bestselling drug. No matter that the inventors' patents may have years to run; Mr. Sherman is a master at picking holes in such claims, and then pursuing his interests in court. His company is embroiled in almost 100 lawsuits and spends more than $10m a year in legal fees.

(Mulveny Decl. ¶ 20, Ex. U (*Generic Gadfly: Barry Sherman and His Generic-Drug Company, Apotex, Have Put Big Pharma in a Tizzy*, 363 Economist at 65 (Apr. 13, 2002)).

In just the past six years, Apotex Inc. has been a party to over 60 patent suits in the United States. (Mulveny Decl. Ex. W). Nine of those suits were filed in Delaware. (Mulveny Decl. Exs. I-P). Notably, Apotex Inc. was the plaintiff in a declaratory judgment suit against Pfizer in this Court. (Mulveny Decl. Ex. I). As a result, Apotex Inc. obtained a covenant not to sue and began selling a generic version of the pharmaceutical product at issue in that case, quinapril. (*Id.*; Mulveny Decl. Ex. X (Fed. Cir. decision noting covenant not to sue); Mulveny Decl. Ex. H at 22).

In seven of the remaining Delaware cases (the eighth was dismissed before the Answer was filed), Apotex Inc. answered the Complaints, raised Counterclaims, and never challenged personal jurisdiction. (Mulveny Decl. Exs. J-P). In February of this year, while simultaneously contesting this Court's jurisdiction over it, Apotex Inc. again consented to personal jurisdiction in Delaware. (Mulveny Decl. Ex. O).

Quite significantly, less than a year ago, Apotex Inc. unequivocally admitted the propriety of personal jurisdiction over it in Delaware in an ANDA case indistinguishable from this one:

> 8.    Based on the facts and causes alleged herein, this Court has personal jurisdiction over Defendants.
>
> ANSWER:    Admitted that the Court has personal jurisdiction over Apotex Inc. and Apotex Corp.; otherwise denied.

(Mulveny Decl. Ex. L (Apotex Inc. Answer to Allergan Complaint) at 3, ¶ 8).

In those nine other cases, Apotex Inc. engaged the services of Delaware law firms to represent it and presumably paid the law firms substantial sums. (Mulveny Decl. Exs. I-P).

Very plainly, Apotex attempts to pick and choose its jurisdictions on a case-by-case basis. However, having elected to litigate in Delaware on such a frequent basis, its efforts to avoid Delaware in this case should be rejected.[9]

Because Apotex Inc. actively conducts its ANDA litigation business in Delaware, and avails itself of the resources of the Delaware courts to advance its business purposes, it is amenable to service of process under the Delaware long-arm statute. *See, e.g., Colonial Mortgage Serv. Co. v. Aerenson*, 603 F. Supp. 323, 325, 327 (D. Del. 1985) (general jurisdiction held to exist where, inter alia, the defendant had "repeatedly invoked the benefits of the Delaware state courts to protect its interests" by filing suit in Delaware). In addition, because Apotex Inc. has demonstrated through its voluntary presence in the federal district court in Delaware that it could reasonably expect to be haled into court here and can, without undue burden, appear here, defend itself, and assert claims and counterclaims, the exercise of personal jurisdiction over Apotex Inc. comports with due process.

This case involves a Delaware plaintiff -- Pfizer -- and "Delaware has a strong preference in favor of affording its citizens, such as a Delaware resident in this case, a judicial forum and respecting their choice of forum." *Wright v. American Home Prods. Corp.*, 768 A.2d 518, 539 (Del. Super. 2000); *cf. Merck & Co. v. Barr Labs., Inc.*, 179 F. Supp. 2d 368, 375 (D. Del. 2002) (stating that the case did not involve Delaware plaintiffs as a factor in concluding that Delaware has no interest in adjudicating the case).

### (2) Apotex continuously and systematically sells its generic medicines in Delaware

According to their website, Apotex makes private label ranitidine (Zantac®) and omeprazole (Prilosec®) for sale in the United States. (Mulveny Decl. ¶ 9, Ex. H [Apotex's U.S.

---

[9] The only apparent distinction between the Delaware cases in which Apotex Inc. did not challenge jurisdiction and this case where it has challenged jurisdiction is the identity of the judges to whom the cases were assigned.

product list and descriptions]

<http://www.apotexcorp.com/en/products/search.asp?qt=All&qs=&t=All%20Products>).

Apotex also sells some notable generic products in the United States: amlodipine besylate

(Norvasc®), gabapentin (Neurontin®), Paroxetine (Paxil®), Carvedilol (Coreg®) pravastatin

sodium (Pravachol®), quinapril (Accupril®), and sertraline (Zoloft®). (*Id.*). These are being

offered for sale in Delaware. (Mulveny Decl. ¶ 23, Ex. V). That Apotex may send these products

into Delaware via its U.S. corporations does not mitigate the fact that a significant amount of

Apotex's products is being sold in Delaware stores to Delaware citizens. And Apotex has not

argued that it does not intend for its products to be sold in Delaware. It sells its products

throughout the United States and makes no effort to exclude Delaware from its national sales.

Apotex's products therefore are also necessarily being prescribed by Delaware doctors, used in

Delaware hospitals and other facilities and are often substituted for brand products. According

to data compiled from IMS, Apotex sold over 132,000 prescriptions totaling over $2.8 million in

2008 alone in Delaware. (*See* Mulveny Decl. ¶ 23, Ex. V).

The Federal Circuit recognizes that sales and distribution of products in the forum state

support general jurisdiction. *See LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375

(Fed. Cir. 2000). That defendant employed "multiple distributors in Ohio and nets several

millions of dollars per year from sales in Ohio" (*Id.*, 232 F.3d at 1370), which the Federal Circuit

held constituted "maintain[ing] 'continuous and systematic' contacts" with Ohio. *Id.*, 232 F.3d at

1375.

Whether the amount of income derived from the forum state is a small portion of the

defendant's total income "is not decisive." *Hill v. Equitable Trust Co.*, 562 F. Supp. 1324, 1331

(D. Del. 1983). "Generally speaking, the appropriate inquiry under Section 3104(c)(4) is whether

[the defendant], in absolute dollar amounts, 'derives substantial revenue' from Delaware." *Id.*
Moreover, even if the "revenue derived from Delaware is insubstantial, Section 3104(c) provides
for jurisdiction if the defendant's conduct is persistent or regular in Delaware, irrespective of the
substantiality of the revenue derived from the State." *Id.* Accordingly, the *Hill* court found
personal jurisdiction existed even though the defendant's income from transactions in Delaware
amounted to only about $50,000. *Id.* Likewise, a recent ANDA case found general jurisdiction
existed where the defendant's sales in the forum state over four years totaled $6 million. *See Eli
Lilly & Co. v. Mayne Pharma (USA) Inc.*, 504 F. Supp. 2d 387, 390-91 (S.D. Ind. 2007).

As the court recognized in *Eli Lilly*, "'[i]t is the nature of the activity, rather than its
quantitative character', that must be analyzed to determine whether the court has personal
jurisdiction." *Id.* at 395 (citation omitted). Here, Apotex has directed its continuous and
systematic business activities of litigating ANDAs and selling its products in Delaware.[10]

Equally important, presumably Apotex intends, if its ANDA is approved, to also sell its
atorvastatin generic product in Delaware.

## 2.    Exerting jurisdiction over Apotex complies with Due Process of Law

For the due process inquiry, the Federal Circuit applies the "minimum contacts" standard
developed by the Supreme Court in *International Shoe*. *Hildebrand*, 279 F.3d at 1355. Under the
*International Shoe* standard, due process requires that, in order to subject a defendant who is
"not present within the territory of the forum" to personal jurisdiction, the court must first make
sure that the party "ha[s] certain minimum contacts with [the forum] such that the maintenance

---

[10] Pfizer has not had the opportunity to discover the full details of Apotex's distribution network, and the exact
amount of Apotex's sales in Delaware. However, on information and belief, Pfizer contends that Apotex derives a
substantial amount of income from the sales of its products in Delaware. And if Apotex's websites are to be
believed, it uses Apotex Corp. to sell its products in the United States and in Delaware. As discussed in section V.B.
below, Pfizer reserves the right to obtain jurisdictional discovery if this Court believes it would be necessary to
resolve Apotex's Motion to Dismiss.

of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See Int'l Shoe Co. v. Washington*, 326 U.S. at 316 (citations omitted).

To find that a defendant has sufficient "minimum contacts" with the forum state, the Supreme Court requires that a plaintiff must demonstrate either (a) specific or (b) general personal jurisdiction. *Helicopteros*, 466 U.S. at 414. As discussed above, Pfizer has established that this Court has both specific and general jurisdiction with respect to the Delaware Long-Arm statute. Thus, the constitutional test is also satisfied. *See Colonial Mortgage*, 603 F. Supp. at 327 ("The constitutional test for personal jurisdiction is similar in this instance to that applied under the statutory framework previously discussed").[11]

The Court's exertion of personal jurisdiction over Apotex would not offend traditional notions of justice and fair play. In fact, to decline jurisdiction would legitimize Apotex's strategy of hiding behind the Canadian border to not only cause harm to Delaware residents, but also to conduct its substantial business in Delaware while denying Delaware residents from seeking redress for Apotex's harms in Delaware. The balance of fairness and justice clearly tip in Pfizer's favor.

Additionally, Apotex has consented to jurisdiction in Delaware in at least eight other cases over the last six years. Apotex has even come to Delaware to sue Pfizer in the past. And it has frequently asserted counterclaims. Given its willingness to litigate in Delaware in the past, Apotex cannot now claim surprise at being sued by Pfizer in Delaware in this case.

---

[11] With respect to the three-prong specific jurisdiction Constitutional test set forth by the Federal Circuit, Pfizer has already established that: (1) Apotex purposefully directed its activities at residents of Delaware; and (2) this lawsuit arises out of or relates to Apotex's activities. *3D Systems Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1378 (Fed. Cir. 1998) (citations omitted). The third prong -- that the assertion of personal jurisdiction is reasonable and fair -- is Apotex's burden to establish. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). To defeat jurisdiction, Apotex must make a compelling case that other considerations render the exercise of jurisdiction constitutionally unreasonable. *Id.*

Finally, in its Motion to Dismiss, Apotex complains that the exercise of jurisdiction in this case would "violate the most basic tenets of due process, thus requiring dismissal as a matter of law" because nothing about this action arose or occurred in Delaware and Apotex has no contact in Delaware. (OpenBr at 16-17). Apotex goes so far as to insist that "nothing, repeat nothing" concerning its ANDA occurred "anywhere near Delaware." (OpenBr at 11). Apotex's alleged total absence from Delaware is belied the following:

    (1)    Apotex sent its ANDA notice letter to Pfizer's Delaware counsel. The ANDA notice letter is an essential part of its ANDA and it provided Pfizer the requisite notice to bring this suit.

    (2)    Apotex's ANDA submission is a tort committed in Delaware as that is where Pfizer resides. The tort of patent infringement is the very basis for this lawsuit.

    (3)    Apotex has continuous and systemic contacts with Delaware arising from its business of litigating patents here and in selling generic medicines here.

    (4)    Apotex has consented to litigating in Delaware on several times in the recent past. It is no stranger to this Court.

Apotex's substantial connections to Delaware, both in connection with its ANDA submission and those built up through its generic medicine business establish, confirm that the exercise of personal jurisdiction over Apotex does not offend Due Process under the Constitution.

### B.    Pfizer is entitled to jurisdictional discovery to support its opposition of Apotex's Motion to Dismiss

Courts have recognized that facts which would establish personal jurisdiction over the defendant are often in the exclusive control of the defendant. *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A.*, 723 F.2d 357, 362 (3d Cir. 1983). As such, a plaintiff may be unable, without some discovery, to properly respond to a motion to dismiss pursuant to 12(b)(2), and a court will therefore allow some discovery. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1977) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues."); *see also Fraley v. Chesapeake & Ohio Ry. Co.*, 397 F.2d 1, 3 (3d Cir. 1968) (finding the district court's refusal to permit discovery in aid of personal

jurisdiction improper). The Third Circuit, which is the controlling authority on this point, mandates that jurisdictional discovery should be allowed unless the plaintiff's claim is "clearly frivolous" *Bauxites*, 723 F.2d at 362 (citing cases). As discussed above, Pfizer's claim that this Court has jurisdiction over Apotex is not clearly frivolous. Therefore, Pfizer is entitled to jurisdictional discovery.

In the event that the Court finds that Pfizer has not met its burden to establish personal jurisdiction over Apotex based on the limited information presently available, Pfizer respectfully requests that it be granted leave to pursue jurisdictional discovery of Apotex and be provided a reasonable opportunity to supplement its Answer in opposition to Apotex's Motion to Dismiss.

## VI.    CONCLUSION

Accordingly, for all the above reasons, Apotex's Motion to Dismiss should be denied.

CONNOLLY BOVE LODGE & HUTZ LLP


/s/ Rudolf E. Hutz
Rudolf E. Hutz (#484)
Jeffrey B. Bove (#998)
Mary W. Bourke (#2356)

OF COUNSEL:                          Daniel C. Mulveny (#3984)
William E. McShane                   1007 N. Orange Street
Connolly Bove Lodge & Hutz LLP       P. O. Box 2207
1875 Eye Street, NW                  Wilmington, DE 19899-2207
Suite 1100                           (302) 658-9141
Washington, DC 20006
(202) 572-0335


*Attorneys for Plaintiffs*


Dated: March 16, 2009

663442_2.DOC

27

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2009, a true copy of the foregoing *Plaintiffs'*

*Memorandum In Opposition To Defendant Apotex Inc.'s Rule 12(b)(2) Motion To Dismiss*

*For Lack Of Personal Jurisdiction* was electronically filed with the Clerk of the Court using

CM/ECF which will send notification of such filing to the following and the document is

available for viewing and downloading from CM/ECF:

> John C. Phillips, Jr.
> Phillips, Goldman & Spence, P.A.
> 1200 North Broom Street
> Wilmington, DE 19806

I hereby certify that on March 16, 2009, I have sent by U.S. Mail the foregoing document

to the following non-registered participant:

> William A. Rakoczy, Esquire
> Rakoczy Molino Mazzochi Siwik LLP
> 6 West Hubbard Street
> Chicago, IL 60610

> /s/ Rudolf E. Hutz
> Rudolf E. Hutz (#484)
> Jeffrey B. Bove (#998)
> Mary W. Bourke (#2356)
> Daniel C. Mulveny (#3984)
> 1007 N. Orange Street
> P.O. Box 2207
> Wilmington, DE 19899-2207
> (302) 658-9141
> *Attorneys for Plaintiffs*

663442_2.DOC